## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS<br><br>                Plaintiff,<br><br>   v.<br><br>THE BOROUGH OF BELMAR, THE MAYOR & COUNCIL OF THE BOROUGH OF BELMAR, MAYOR MARK WALSIFER, in his official capacity and not as an individual, COUNCILMAN THOMAS BRENNAN, in his official capacity and not as an individual, COUNCILMAN JAMES MCCRACKEN, in his official capacity and not as an individual, COUNCILWOMAN PAT WANN, in her official capacity and not as an individual, COUNCILMAN TOM CARVELLI, in his official capacity and not as an individual,<br><br>                Defendants. | **CONSENT JUDGMENT AND SETTLEMENT AGREEMENT**<br><br>Civ. No. 3:21-cv-11016-MAS-DEA |

WHEREAS, Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff" or "Verizon") instituted this action for varied relief under the Telecommunications Act of 1996 (47 U.S.C. § 151 *et seq.,* hereinafter the "Act") and pursuant to other federal and state causes of action in response to the actions by Defendants as set forth in its Complaint filed May 10, 2021 (ECF 001, "Complaint"); and

WHEREAS, Defendants, the Borough of Belmar, the Mayor & Council of the Borough of Belmar, Mayor Mark Walsifer, in his official capacity and not as an individual, Councilman Thomas Brennan, in his official capacity and not as an individual, Councilman James McCracken, in his official capacity and not as an individual, Councilwoman Pat Wann, in her official capacity and not as an individual, Councilman Tom Carvelli, in his official capacity and not as an individual

(collectively, the "Borough" or "Defendants") in an Answer filed June 15, 2021 (ECF 007, "Answer") opposed Plaintiff's claims and the relief sought and asserted various defenses; and

WHEREAS, the Parties engaged in extensive settlement discussions; and

WHEREAS, the settlement discussions resulted in this Consent Judgement which shall resolve all issues between the parties and authorize Verizon to proceed with the construction of twenty (20) small wireless facilities that are the subject of this action on the terms and conditions contained herein; and

WHEREAS, the undersigned counsel represent that they are fully authorized to execute this Consent Judgement on behalf of their respective parties;

NOW, THEREFORE, without any admission of wrongdoing or violation of law by any party, and subject to the terms and conditions set forth below, the Parties stipulate and agree and consent to the entry of Judgement as follows:

1.      This Consent Judgment and Settlement Agreement (the "Settlement Agreement") incorporates, by reference, the January 13, 2021, Applications to the Borough for permits to allow for the construction of eighteen (18) small wireless communications facilities in the public rights-of-way within the Borough consisting of antennas, radio equipment, cabling and associated equipment (each installation of antennas, equipment and cabling is collectively referred to herein as a "Small Wireless Facility") - (the "January Application").

2.      The January Application proposed the installation of Small Wireless Facilities on the east side of Ocean Avenue in the Borough of Belmar.

3.      The Small Wireless Facilities proposed in the January Application were proposed to be installed on  new single-carrier decorative pole, which poles would be installed to support the Small Wireless Facility at the proposed locations.

4.      On June 1, 2021, the Borough adopted Ordinance No. 2021-15 entitled "An Ordinance Establishing Procedures and Standards Regarding Deployment of Small Wireless Facilities in Public Rights-Of-Way in the Borough of Belmar" (hereinafter referred to as "Ordinance 15").

5.      On July 27, 2021, the Belmar Zoning Board of Adjustment adopted a resolution that denied an application filed by Plaintiff to install a wireless communications facility on the roof of the building located at 1715 Ocean Avenue, Belmar, New Jersey and shown on the Belmar Tax Assessment Map as Block 170, Lot 13 (the "Mamaluke's Application").  The Mamaluke's Application was not the subject of Plaintiff's Complaint in this action.

6.      Ordinance 15 references a Wireless Siting Plan which is not included in Ordinance 15, but is attached hereto as Exhibit A.

7.      Attached as Exhibit B is an aerial photograph upon which the location of Small Wireless Facilities may be installed pursuant to the Wireless Siting Plan along Ocean Avenue in Belmar are labeled in green, as well as five (5) additional locations labeled in red.

8.      The parties agree that rather than the eighteen (18) Small Wireless Facilities proposed in the January Application, Verizon is hereby permitted to install twenty (20) Small Wireless Facilities on the east side of Ocean Avenue at the locations referenced on Exhibit B as "Belmar Boardwalk 01" through "Belmar Boardwalk 20" ("Settlement Sites").

9.      Verizon agrees not to challenge the Zoning Board's denial of the Mamaluke's Application and agrees to let that denial stand in favor of the plans described herein.

10.     The parties agree that rather than having the Small Wireless Facilities installed on single-carrier decorative pole, Verizon shall install each of the twenty (20) Small Wireless Facilities on a decorative pole capable of being increased in height to support an additional wireless

provider's Small Wireless Facilities comparable to the design and specifications prepared by ConcealFab attached hereto as Exhibit C. The parties acknowledge that the designs and specifications shown in Exhibit C are conceptual, meaning that the actual manufacturer, appearance and dimensions of the communications equipment, number of equipment components, and the height and diameter of the poles may increase and/or differ in the final plans for the Settlement Sites and from time-to-time to accommodate Plaintiff's communications equipment, and the additional communications equipment and antennas of any future wireless provider that may collocate on the poles at the Settlement Sites.  Furthermore, the parties agree that the poles, communications equipment and antennas installed at the Settlement Sites shall be installed by Verizon (or its designated contractor) using equipment and pole manufactures, vendors and contractors of Verizon's choosing.

11.     With respect to the Borough's use of the poles at the Settlement Sites, the parties agree as follows:

a.      Each of the poles at the Settlement Sites shall be constructed with a street light attached to it.  The street light shall be at Verizon's cost, but the electricity, maintenance and repair of the street light shall be at the Borough's cost and expense.

b.      Verizon shall install, at its expense, a conduit to each Settlement Site for the benefit of the Borough.  The conduit will not be a linear path connecting each Settlement Site, but will terminate at Verizon's connection to the power source for each individual Settlement Site.

c.      Verizon shall permit the Borough to install, at the Borough's cost and expense, a camera on each of the twenty poles.  Verizon will run a coaxial cable within the pole to accommodate the Borough's cameras provided the specifications for the coaxial

4

cable is provided by the Borough to Verizon in advance of the pole installation. The installation of each camera and any other work on the pole shall be coordinated with Verizon to ensure that it does not interfere with existing wireless equipment on the pole, it is protective of workers safety and protective of the equipment. The Borough shall be responsible for all maintenance and repair of the coaxial cable and cameras.

        d.     Each of the twenty poles shall include one electric outlet for use by the Borough to hang its holiday lights and decorations, with the cost of electric service to be at Belmar's cost. In addition, the location of the lights and decorations shall be coordinated with Verizon and shall only be permitted in the center of the pole (above the equipment and below the antenna shrouds) and shall be further subject to an EME study to ensure that the lights and/or decorations do not cause interference with existing wireless equipment.

12.    The poles shall either be installed, owned and maintained by Verizon, or by a third-party under contract with Verizon and subject to terms and conditions acceptable to Verizon. The timing of the installation of the poles, associated fiber optic lines, cables, electrical connections and the Small Wireless Facilities and associated commuications equipment shall be at Verizon's sole discretion. Verizon may install the Small Wireless Facilities and poles at each of the Settlement Sites individually, in groups of two or more, or all twenty, simultaneously. There is no deadline for the initiation of the construction work, but in no circumstances shall work commence before December 1, 2022. Verizon shall coordinate the work with the Borough Engineer. Within seven (7) days of the date of completion of construction of the Small Wireless Facilities, Verizon shall notify the Borough Adminstrator of same and following the Borough's inspection of same, the Borough Engineer (or Construction Official) shall issue a Certificate of Completion (or Certificates of Completion) for same. If the Certificate(s) of Completion is not issued in ten (10)

days, the construction shall be deemed to be approved and the Certificate(s) of Completion deemed issued.

13.     Whether or not Verizon owns the poles on which the Small Wireless Facilities are collocated, the rights granted to Verizon as set forth in this Consent Judgment shall not be diminished and the costs to be incurred by Verizon and paid to the Borough to use the public right of way and access its Small Wireless Facilities and/or poles located within the public right of way shall not be increased or decreased.

14.     Whether or not Verizon owns the poles, Verizon shall cooperate with the Borough (at no additional cost to Verizon) to allow the Borough to install, at its cost and expense, or have others install on behalf of the Borough, such equipment, antennas or other technologies that the Borough wishes to install in the pole (in addition to the cameras, street lights and holiday decorations set forth in Paragraph 11 above), provided the same does not cause material interference with Verizon's equipment in Verizon's commercially reasonable determination.  The Borough shall notify Verizon of its intent to install equipment on any Settlement Site and provide Verizon with details of the proposed installation not less than sixty (60) days prior to the date of the proposed installation for Verizon's review and approval, which approval shall not be unreasonably withheld, conditioned or delayed, and coordination of the work.

15.     Whether or not Verizon owns the poles, Verizon shall cooperate with any other FCC-licensed provider of personal wireless services (each a "Carrier") to allow such Carrier to collocate its antennas and equipment in the pole, provided the same does not cause material interference with Verizon's equipment as determined by Verizon in Verizon's commercially reasonable discretion.  The parties agree that a pole may be enlarged to accommodate such additional Carrier's equipment and increased in height by approximately five (5) feet to allow for

such additional Carrier as shown on Exhibit C.  All costs associated with such additional collocation shall be borne by the additional Carrier and not Verizon, including any make-ready work needed to accommodate an additional Carrier's equipment, and any additional Carrier shall be responsible for obtaining necessary government approvals and maintaining its additional Carrier equipment in accordance with applicable laws, government approvals, and other government requirements and Verizon's requirements.

16.    The parties acknowledge and agree that technological changes may necessitate future modifications of the Small Wireless Facilities and related communcations equipment on the poles and that same shall be permitted, provided the general appearance of the pole is maintained substantially consistent with Exhibit C and the height is not increased beyond that permitted herein.

17.    Verizon shall submit revised plans for the twenty (20) Small Wireless Facilities and poles to the Borough Engineer, at 601 Main Street, Belmar, New Jersey 07719. Within ten (10) days of the entry of this Consent Judgement, or the delivery of the revised plans, whichever is later, the Borough of Belmar Council ("Council") shall approve the twenty (20) Small Wireless Facilities Applications and issue or direct the issuance of all necessary permits for the installation of same and related poles.  All necessary permits for the installation of same, shall be deemed granted automatically upon the expiration of the timeframe set forth for said approvals in this section,.

18.    Verizon has an agreement with the County of Monmouth dated December 12, 2016, entitled "County Utility Agreement for Occupancy Within County Right-Of-Way" which allows the installation of Small Wireless Facilities in the Monmouth County public rights-of-way, subject to review by the County Engineer.  Verizon shall provide a copy of the consent from the County for the twenty Small Wireless Facilites to the Borough Engineer prior to the installation of same.

7

19.     The parties acknowledge that Ordinance 15 shall not apply to the twenty (20) Settlement Sites, but rather this Settlement Agreement shall govern the rights and responsibilities of the parties and shall constitute a right-of-way use agreement by and between the Borough of Belmar and Verizon with respect to use of the public right-of-way to operate, maintain, repair, replace, and modify Verizon's Small Wireless Facilities, poles and related communcations equipment as set forth herein, such that no further permits or approvals outside of this Settlement Agreement shall be required by the Borough for such use.

20.     Following the receipt of all necessary permits and approvals for all twenty (20) Settlement Sites, and no later than thirty (30) days following the issuance of a Certification of Completion for same, Verizon shall remit to the Borough pursuant to N.J.S.A. 54:30A-124, as fair and reasonable compensation for access to and use of the public right-of-way for twenty (20) years for the purposes set forth herein and as reimbursement for any costs incurred by the City in connection therewith, One Hundred Eight Thousand Dollars ($108,000.00), which sum is equal to two hundred and seventy dollars ($270.00) per twenty (20) Small Wireless Facilities per year for twenty (20) years ("Advanced ROW Use Fee").   Verizon shall deduct the cost of all permits, approvals, professional escrow and other fees whatsoever required from the Borough , including any street opening permits, electrical permits, construction permits, etc. from the Advanced, ROW Use Fee.

21.     Within twenty-one (21) days of the issuance of such approvals by the Borough for the Settlement Sites, but no later than the start of any construction, and on each annual anniversary thereof, Verizon shall submit to the Borough a Certificate of Insurance showing liability insurance of the amount of $1,000,000.00 and that the policy names the Borough of Belmar as an additional insured.

22.     With the filing of the applications, Verizon shall submit to the Borough a check in the amount of Five Thousand Dollars ($5,000.00) to cover the cost of any and all professional reviews required by the Borough of Verizon's Applications.  The parties acknowledge that this sum is in addition to the Five Thousand Dollars ($5,000.00)  previously paid by Verizon to the Borough for professional review and shall constitute all funds due from Verizon for professional review of the January Applications as modified herein, and the two additional applications contemplated herein.

23.     Verizon shall have access to the rights-of-way, poles and its Small Wireless Facilities to effectuate repairs, maintenance, modifications and replacements twenty-four hours per day, seven days per week.  Verizon shall maintain its Small Wireless Facilities in good operation, condition and repair.  In addition, Verizon will endeavor to limit work on the poles during the busy summer season, but the parties understand and agree that certain work, including maintenance and repair, will be conducted during that time period.

24.     For the twenty (20) Small Wireless Facilities that are the subject of this Consent Judgment, Verizon shall indemnify, defend and hold harmless the Borough, its officers, employees, contractors and agents, attorneys, and volunteers from (i) any claim, action or proceeding brought against the Borough or its officers, employees, agents or attorneys to attack, set aside, void or annul any approvals given by the Borough (ii) from any claims or suits stemming from injuries or property damage that are alleged to be caused by the Small Wireless Facilities or the radio frequencies emitted from said facilities, or related installation activities or work, undertaken by Verizon; except to the extent that any such liability or damage (including judgments, decrees, court costs, and defense costs) arises out of the willful misconduct or negligence of the Borough, its officers, employees, contractors and agents, attorneys, and volunteers.

25.     No additional Small Wireless Facilities beyond the twenty (20) approved herein may be constructed, erected, mounted, attached, operated or maintained within the right-of-way within the Borough by Verizon without the issuance of a permit by the Borough, pursuant to applicable laws and normal permitting processes required by the Borough.

26.     Any specific terms contained in this Consent Judgement shall have the definitions assigned to those terms in either the Federal Communications Commission ("FCC") Rules and Regulations, with the Rules of the FCC taking precedent in the event of any conflict.

27.     All Small Wireless Facility and/or installations shall be removed within thirty (30) days of being taken permanently out of service. If Verizon fails to remove these installations, the Borough may do so at Verizon's expense.

28.     This Settlement Agreement supersedes any prior agreement between the Parties related to this Action.

29.     This SettlementAgreement shall be in force and effect for an initial term of twenty (20) years, and shall automatically be renewed for three (3) additional five (5) year terms, unless properly terminated by either party three (3) months prior to the expiration date of the initial or each additional term.

30.     Counsel for the Parties shall jointly move the Court for entry of an Order approving this Consent Judgement in accordance with FED R. CIV. P. 58.

31.     Upon entry of this Settlement Agreement by the Court, the Parties agree to take all additional steps and actions as may be reasonably required to implement and effectuate the terms and provisions hereof.

32.     If the Court declines to so-order this Settlement Agreement, then this Settlement Agreement shall be deemed null and void and of no further force or effect.

33.     This Settlment Agreement constitutes the full and complete agreement between the Parties and the terms hereof shall not be modified except in writing executed by authorized representatives of the Parties.

34.     In the event of a change of State or Federal law that materially impacts any of the provisions of this Settlement Agreement, the parties shall meet within thirty (30) days to negotiate changes to this Settlement Agreement in good faith.

35.     This Settlement Agreement shall be submitted to the Court to be so-ordered and it is expressly agreed and understood that this Settlement Agreement shall not be binding upon the Parties until it has been approved and so-ordered by the Court.  Subject to Court approval, this Settlement Agreement shall be binding upon the Parties, their successors and assigns.

36.     Neither party admits fault or wrongdoing associated with the claims set forth in the Action and this Settlement Agreement effects a release of all claims each Party may have against the other Party to the Action as of the date signed by counsel for the parties, and the claims brought in the Action may not be used in any future litigation that may arise between the parites, excepting therefrom any claims arising under the terms of this Settlement Agreement, including for the performance and any alleged breach hereof.

37.     Each Party shall bear its own costs and attorneys' fees.

38.     This Court shall retain jurisdiction to enforce the terms and conditions of this Settlement Agreement.

Respectfully Submitted,

PRICE, MEESE, SHULMAN &
D'ARMINIO, PC
*Attorneys for Plaintiff*

By: _____
    Gregory D. Meese
    50 Tice Boulevard, Suite 380
    Woodcliff Lake, NJ 07677
    (201) 391-3737

    Dated: July 26, 2022

DASTI, MURPHY, MCGUCKIN, ULAKY,
KOUTSOURIS & CONNORS
*Attorneys for Defendants*

By: _____
    Jerry J. Dasti
    506 Hooper Avenue
    Toms River, NJ 08753
    (732)349-2446
    August 15, 2022
    Dated: July ____, 2022

BOTTA ANGELI, L.L.C.
*Attorneys for Defendants*

By: _____
    Natalia R. Angeli, Esq.
    50 South Franklin Turnpike
    Ramsey, NJ 07446

    Dated: July ___, 2022

SO ORDERED:

_____
Honorable Zahid N. Quraishi, U.S.D.J

Dated: _____

Respectfully Submitted,

PRICE, MEESE, SHULMAN &
D'ARMINIO, PC
*Attorneys for Plaintiff*

DASTI, MURPHY, MCGUCKIN, ULAKY,
KOUTSOURIS & CONNORS
*Attorneys for Defendants*

By: _____
    Gregory D. Meese
    50 Tice Boulevard, Suite 380
    Woodcliff Lake, NJ 07677
    (201) 391-3737

    Dated: July 26, 2022

By: _____
    Jerry J. Dasti
    506 Hooper Avenue
    Toms River, NJ 08753
    (732)349-2446

    Dated: July ___, 2022

BOTTA ANGELI, L.L.C.
*Attorneys for Defendants*

By: _____
    Natalia R. Angeli, Esq.
    50 South Franklin Turnpike
    Ramsey, NJ 07446
    Dated: ~~July~~ August 3, 2022

SO ORDERED:

_____
Honorable Zahid N. Quraishi, U.S.D.J

Dated:_____

**Exhibit A – Belmar Siting Plan (Excel Spreadsheet)**

| Belmar Location Name | Town | Latitude | Longitude |
|---|---|---|---|
| Belmar 1 | Belmar | 40.149431 | -74.040031 |
| Belmar 2 | Belmar | 40.167903 | -74.053462 |
| Belmar 3 | Belmar | 40.168452 | -74.016872 |
| Belmar 4 | Belmar | 40.169661 | -74.016424 |
| Belmar 5 | Belmar | 40.170191 | -74.019319 |
| Belmar 6 | Belmar | 40.170665 | -74.016068 |
| Belmar 7 | Belmar | 40.170862 | -74.018181 |
| Belmar 8 | Belmar | 40.170906 | -74.027334 |
| Belmar 9 | Belmar | 40.171379 | -74.023514 |
| Belmar 10 | Belmar | 40.171453 | -74.020978 |
| Belmar 11 | Belmar | 40.171646 | -74.015721 |
| Belmar 12 | Belmar | 40.172253 | -74.019861 |
| Belmar 13 | Belmar | 40.172306 | -74.015521 |
| Belmar 14 | Belmar | 40.172995 | -74.015244 |
| Belmar 15 | Belmar | 40.173223 | -74.026057 |
| Belmar 16 | Belmar | 40.173281 | -74.017219 |
| Belmar 17 | Belmar | 40.173487 | -74.021401 |
| Belmar 20 | Belmar | 40.173987 | -74.023996 |
| Belmar 21 | Belmar | 40.174007 | -74.014865 |
| Belmar 22 | Belmar | 40.174057 | -74.019218 |
| Belmar 23 | Belmar | 40.174106 | -74.021087 |
| Belmar 24 | Belmar | 40.174537 | -74.016839 |
| Belmar 25 | Belmar | 40.174585 | -74.023071 |
| Belmar 26 | Belmar | 40.174648 | -74.025253 |
| Belmar 27 | Belmar | 40.174721 | -74.027188 |
| Belmar 28 | Belmar | 40.175017 | -74.02085 |
| Belmar 30 | Belmar | 40.175217 | -74.019384 |
| Belmar 31 | Belmar | 40.175483 | -74.022762 |
| Belmar 32 | Belmar | 40.175691 | -74.014266 |
| Belmar 33 | Belmar | 40.175701 | -74.018065 |
| Belmar 34 | Belmar | 40.175918 | -74.029899 |
| Belmar 35 | Belmar | 40.175983 | -74.024829 |
| Belmar 37 | Belmar | 40.176203 | -74.016367 |
| Belmar 39 | Belmar | 40.176284 | -74.020788 |
| Belmar 40 | Belmar | 40.176603 | -74.022301 |
| Belmar 41 | Belmar | 40.176729 | -74.027898 |
| Belmar 44 | Belmar | 40.177035 | -74.013779 |
| Belmar 45 | Belmar | 40.177108 | -74.024368 |
| Belmar 46 | Belmar | 40.177284 | -74.016072 |
| Belmar 47 | Belmar | 40.177524 | -74.026361 |
| Belmar 48 | Belmar | 40.177856 | -74.017851 |
| Belmar 49 | Belmar | 40.178011 | -74.028476 |
| Belmar 50 | Belmar | 40.178012 | -74.019873 |
| Belmar 52 | Belmar | 40.178109 | -74.021935 |
| Belmar 53 | Belmar | 40.178146 | -74.023996 |
| Belmar 54 | Belmar | 40.178428 | -74.026044 |
| Belmar 55 | Belmar | 40.178735 | -74.013167 |
| Belmar 56 | Belmar | 40.178839 | -74.017498 |
| Belmar 57 | Belmar | 40.179174 | -74.024414 |
| Belmar 58 | Belmar | 40.179264 | -74.019302 |
| Belmar 59 | Belmar | 40.179433 | -74.015203 |
| Belmar 60 | Belmar | 40.179516 | -74.020943 |

| Belmar 61 | Belmar | 40.179551 | -74.025853 |
|---|---|---|---|
| Belmar 63 | Belmar | 40.179927 | -74.029263 |
| Belmar 64 | Belmar | 40.180035 | -74.012693 |
| Belmar 65 | Belmar | 40.180094 | -74.018012 |
| Belmar 67 | Belmar | 40.180401 | -74.024968 |
| Belmar 68 | Belmar | 40.180447 | -74.014831 |
| Belmar 70 | Belmar | 40.180737 | -74.020977 |
| Belmar 73 | Belmar | 40.181092 | -74.022932 |
| Belmar 74 | Belmar | 40.181176 | -74.015161 |
| Belmar 75 | Belmar | 40.181329 | -74.019494 |
| Belmar 76 | Belmar | 40.181735 | -74.012079 |
| Belmar 77 | Belmar | 40.182244 | -74.024485 |
| Belmar 79 | Belmar | 40.182405 | -74.014179 |
| Belmar 80 | Belmar | 40.182554 | -74.019907 |
| Belmar 81 | Belmar | 40.182763 | -74.015817 |
| Belmar 82 | Belmar | 40.182852 | -74.021876 |
| Belmar 83 | Belmar | 40.183053 | -74.011587 |
| Belmar 84 | Belmar | 40.183252 | -74.017861 |
| Belmar 85 | Belmar | 40.183357 | -74.023732 |
| Belmar 86 | Belmar | 40.183468 | -74.013743 |
| Belmar 87 | Belmar | 40.183503 | -74.019815 |
| Belmar 88 | Belmar | 40.183671 | -74.015743 |
| Belmar 89 | Belmar | 40.184044 | -74.024911 |
| Belmar 90 | Belmar | 40.184178 | -74.021741 |
| Belmar 91 | Belmar | 40.184253 | -74.012651 |
| Belmar 92 | Belmar | 40.184266 | -74.017613 |
| Belmar 94 | Belmar | 40.184708 | -74.015344 |
| Belmar 95 | Belmar | 40.184884 | -74.011061 |
| Belmar 96 | Belmar | 40.185261 | -74.017363 |
| Belmar 97 | Belmar | 40.185414 | -74.021314 |
| Belmar 98 | Belmar | 40.185436 | -74.013068 |
| Belmar 100 | Belmar | 40.186002 | -74.010376 |
| Belmar 102 | Belmar | 40.186276 | -74.014731 |
| Belmar 104 | Belmar | 40.186628 | -74.011462 |
| Belmar 105 | Belmar | 40.186846 | -74.017986 |

**<u>Exhibit B – Aerial Photograph of Location of 20 Approved Small Wireless Facilities</u>**



**<u>Exhibit C – Pole Specification (Conceal Fab)</u>**



Ø24"

SECTION A-A
SCALE 1 : 15
Ø22 5/16"

SECTION B-B
SCALE 1 : 15
Ø21 3/4"

4X Ø1 1/2"
Ø24"

SECTION C-C
SCALE 1 : 15
Ø20"

PROPOSAL DRAWING

☐ APPROVED
☐ APPROVED - WITH CHANGES NOTED
☐ NOT APPROVED - CHANGE AS NOTED & RESUBMIT

APPROVED BY        DATE

JMA CX16OMI236-1C
4G ANTENNA
(BY OTHERS) INSIDE
CONCEALMENT

HIGHEST
APPURTENANCE   34'-1"

INTERNAL MOUNTING
SPACE FOR
3X SAMSUNG 16T16R
RADIO ANTENNAS
(BY OTHERS)

3X SAMSUNG
AT1K01 (BY OTHERS)

5G mmW
CENTERLINE   26'-10"

TOP OF
POLE   25'-7"

25'-0"

2nd OPERATOR RADIO BAY

20'-5"

Ø24"

71 1/2"

( 102 5/8" )

31 1/16"

A    A
B    B

SCALE 1 : 64

Ø14"

FLEXIBLE INTERNAL
MOUNTING SPACE FOR
SAMSUNG 8T8R LS6,
SAMSUNG PCS/AWS,
POWER EQUIPMENT AND
FIBER EQUIPMENT
(BY OTHERS)

TOP OF
PEDESTAL   7'-10"

Ø20"

2" OF NON-SHRINK
GROUT

0"

Ø20"

MILBANK
U2272-RL-5T9-BL
POWER METER

METER
CENTERLINE

DISCONNECT

HEIGHT PER LOCAL
ORDINANCE

C    C

0"

ConcealFab®
a valmont COMPANY

10205 FEDERAL DRIVE
COLORADO SPRINGS, CO 80908
PH: 719-599-3400 FX: 719-599-0057
SALES@CONCEALFAB.COM

PROPRIETARY INFORMATION
USE, REPRODUCTION, OR DISCLOSURE
IS SUBJECT TO RESTRICTIONS SET FORTH
IN NON-DISCLOSURE AGREEMENTS AND
PERTINENT CONTRACTUAL DOCUMENTS.
© 2022 ConcealFab, Inc. - All Rights Reserved

DO NOT
SCALE DWG

DIMENSIONS ARE IN INCHES

| | NAME: | DATE: |
|---|---|---|
| MODELED BY: | JTM | 03/29/22 |
| DRAWN BY: | JWB | 6/6/2022 |
| APPROVED BY: | JAM | 6/7/2022 |

TITLE:
CONCEALMENT POLE,
20" PEDESTAL, MULTI-
TENANT

SCALE: 1:54    SHEET SIZE: B    SHEET: 1 OF 1

SALES NUMBER: 901176    REV:

# Belmar Multi Tenant Pole – Single and Multi Tenant Max Heights





- This pole solution provides for phased second tenant by adding additional mast height to the base.

- Initial Solution Allows for a single tenant and limits height to 34' 1". Base solution includes the cobra light arm with fixture at 25'

- The mast added for second tenant support adds a net height of 71" (5'11" to the base solution to increase the highest appurtenance to 40'

6/13/2022